## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

THE RENFREW CENTERS, INC.,    :
    Plaintiff.    :
        :    CIVIL ACTION
    v.    :
        :    NO. 12-3211
UNI/CARE SYSTEMS INC.,    :
    Defendant.    :

**January 17, 2013**        **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff The Renfrew Centers, Inc. ("Renfrew") brings a claim against Defendant

UNI/CARE Systems, Inc. ("UNI/CARE") for making fraudulent misrepresentations that induced

Renfrew to enter into a contract with UNI/CARE.  UNI/CARE moves to dismiss the complaint

and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq*.  Diversity

jurisdiction is proper pursuant to 28 U.S.C. §1332.  For the reasons set forth below,

UNI/CARE's motion will be granted.

## I.     BACKGROUND[1]

Renfrew is a health care organization that specializes in the treatment of eating disorders.

UNI/CARE is a national software vendor that sells health information software.  Renfrew claims

that UNI/CARE's representative, John Gohman, made misrepresentations about UNI/CARE's

"Pro-Filer" product in order to induce Renfrew into purchasing the product.  These

misrepresentations include promises that the product would integrate into Renfrew's "front end

---

[1] When reviewing a motion to dismiss under Rule 12(b)(6), the court "accept[s] the facts of the complaint as true and characterize[s] the facts most favorably to the plaintiff . . . ."  *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1164-65 (3d Cir. 1987).

system," provide electronic billing capabilities, and that Gohman would supervise the product's implementation.  On December 18, 2009, Renfrew signed a contract with UNI/CARE and paid $165,000 for installation of the product and training to use it.

In May 2011, Renfrew discovered that the product did not integrate with its "front end system," that it did not perform as presented, and that staff training was disrupted by UNI/CARE's constantly changing personnel.  Gohman became progressively unresponsive to Renfrew's complaints until January 30, 2012, when he became completely unavailable.  Renfrew claims it cannot use the product at all.  It brings one cause of action against UNI/CARE for fraudulent inducement.

UNI/CARE moves to dismiss Renfrew's complaint and compel arbitration based on an arbitration provision in the parties' contract.

## II.      STANDARD OF REVIEW

UNI/CARE moves to dismiss this case and compel arbitration under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  12(b)(1) requires the dismissal of actions that lack subject matter jurisdiction.  This rule is inapplicable to this case, where subject matter jurisdiction exists by way of diversity of citizenship of the parties, and an amount in controversy greater than $75,000.  *See Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991).  "Dismissal of a[n] . . . action because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted, or Rule 56 covering summary judgments if matters beyond the pleadings were considered."  *Id.* (internal quotation marks omitted).  "When it appears from the face of a complaint, and documents relied upon in the complaint, that certain of its claims are

subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011).  Here UNI/CARE asserts that the agreement it entered into with Renfrew contains an enforceable arbitration clause that applies to Renfrew's claim.  The agreement is attached to the complaint.  Therefore, I will review UNI/CARE's motion under the 12(b)(6) standard.

Under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  This "assumption of truth" is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.  DISCUSSION

Federal law applies when determining whether a dispute falls within the scope of an arbitration agreement.  This contract is subject to the Federal Arbitration Act, a statute that creates federal substantive law governing the duty to honor agreements to arbitrate disputes. 9 U.S.C. § 2 (applying the FAA to written provisions for arbitration in maritime or commercial

contracts); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). The Federal Arbitration Act empowers district courts to compel arbitration in accordance with agreements. 9 U.S.C. § 206. Before compelling arbitration, a court must establish that "(1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 523. The court relies on state-law contract principles for the first step, and federal law for the second step. *Id.* at 524. Here there is no dispute concerning the existence of an agreement to arbitrate. Because the dispute concerns the scope of the arbitration provision, federal law applies.

The parties dispute whether the arbitration provision is broad enough to encompass Renfrew's fraudulent inducement claim. Broadly written arbitration provisions generally encompass fraudulent inducement claims. *Prima Paint Corp. v. Conklin Mfg. Co*., 388 U.S. 395, 403-04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006); *Merritt-Chapman & Scott Corp. v. Pa. Turnpike Comm'n*, 387 F.2d 768 (3d Cir. 1967). These cases contain the quintessential broad arbitration provision, that directs to arbitration any controversy or claim "arising out of" or "related to" the agreement. This language is part of the standard clause recommended by the American Arbitration Association endorsed by the courts: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration." *See In re Petition of Kinoshita & Co.,* 287 F.2d 951, 953 (2d Cir. 1961). The Third Circuit notes that arbitration provisions with the phrases "arising under" and "arising out of" "are normally given broad construction, and are generally construed to encompass claims going to the formation of the underlying agreements." *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000).

4

The relevant provisions of the contract are as follows:

10.05 <u>Initial Dispute Resolution</u>:   In the event of resolution of a dispute regarding either party's performance under the terms of this Agreement, each party agrees to notify the other party in writing regarding the nature of the dispute, within fifteen (15) working days after such dispute arises.  While any such dispute is unresolved, the parties shall, without delay, continue to perform their respective obligations under this Agreement.   The parties further agree to use their best efforts in a good faith attempt to resolve said disputes on a timely basis.   If the parties fail to resolve the dispute within thirty (30) working days of the initial written notification, then each party may assert its rights and remedies as provided under this Agreement.

10.06 <u>Arbitration</u>: In the event the parties fail to resolve a dispute pursuant to the Initial Dispute Resolution procedures set forth herein, said remaining controversy, dispute or claim arising out of or relating to this Agreement, any waiver or amendment, or any breach hereof, shall be settled by arbitration to be held in a location mutually agreed upon by both parties.  If the parties fail to reach a mutual agreement as to the location, the arbitration shall be held in Sarasota County, Florida if brought by Licensee, or in Philadelphia County, Pennsylvania, if brought by Licensor . . . .

Compl. Ex. A at 15-16.

Defendant UNI/CARE argues that because Clause 10.06 uses the broad language "arising out of or relating to," the arbitration provision is broad and inclusive of the fraudulent inducement claim.  Renfrew argues that when read together, Clauses 10.05 and 10.06 form an arbitration provision of narrower scope.  Clause 10.05 describes an Initial Dispute Resolution ("IDR") process for "dispute[s] regarding either party's performance under the terms of this Agreement . . . ."  Clause 10.06 begins,

In the event the parties fail to resolve a dispute pursuant to the Initial Dispute Resolution procedures set forth herein, said remaining controversy, dispute or claim arising out of or relating to this Agreement . . .

Plaintiff Renfrew argues that the phrase "said remaining controversy" limits arbitration to disputes that went through the IDR procedures, but remain unresolved.  Because the disputes that

go through the IDR procedure are only those regarding the parties' "performance under the terms of [the] Agreement," Renfrew maintains that clause is more limiting, and therefore excludes its fraudulent inducement claim.

The parties present divergent ways of interpreting the arbitration clause. Renfrew's narrower reading of the provision is plausible. Yet it is equally plausible that the "remaining controvers[ies], dispute[s] or claim[s]" that the arbitration clause covers includes both disputes that failed to be resolved through the IDR procedure, as well as disputes that never went through the IDR procedure. Claims that never went through the procedures but "aris[e] out of or relat[e] to" the agreement then must go to arbitration as well. This interpretation of the provision broadens it to include the "arising out of or relating to" language, thereby including fraudulent inducement claims.

Federal law prescribes a strong presumption to arbitrate when contracts contain arbitration provisions. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Unless the court has a "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," arbitration is appropriate. *Battaglia*, 233 F.3d at 725 (quoting *AT & T Techs.*, 475 U.S. at 650). This means that ambiguous arbitration provisions are resolved in favor of arbitration. *See Brayman Const. Corp. v. Home Ins. Co.,* 319 F.3d 622, 625 (3d Cir. 2003). Thus, while Renfrew's narrower interpretation of the arbitration provision is plausible, UNI/CARE's equally plausible broader interpretation dictates that the fraudulent inducement claim must go to arbitration.

Even if Renfrew's interpretation of the arbitration provision was unambiguously correct, the fraudulent inducement claim would still go to arbitration under the fact-specific approach implemented by courts to determine if a claim falls under narrower arbitration language. *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir. 1987). Renfrew ignores this approach, arguing instead that as a rule, an agreement to arbitrate issues of performance under the terms of a contract does not include a claim for fraudulent inducement. It cites to *In re Kinoshita*, 287 F.2d at 953 for the proposition that this is a blanket rule. The Second Circuit subsequently confined *In re Kinoshita* to its specific language in *S.A. Mineracao Da Trindade-Samitri v. Utah Intern., Inc.*, 745 F.2d 190, 194 (2d. Cir. 1984). More importantly, the Third Circuit, like many other circuits, has declined to follow *In re Kinoshita. Battaglia,* 223 F.3d at 726.

Instead of embracing *In re Kinoshita*'s blanket rule, courts have adopted a fact-specific approach when determining whether narrower arbitration provisions include fraudulent inducement claims in their scope.[2] *Genesco,* 815 F.2d at 846 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 622 n. 9 (1985)); *RCM Techs., Inc. v. Brignik Tech., Inc.,* 137 F. Supp. 2d 550, 553 (D.N.J. 2001); *Mut. Ben. Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 868 (D.N.J. 1992). Courts focus on the factual allegations in the complaint instead of the legal causes of action asserted. *Genesco,* 815 F.2d at 846. The inquiry therefore focuses on whether the allegations of the complaint involve matters covered by the parties' underlying

---

[2] Renfrew also cites to two other cases, *Washburn v. Societe Commerciale de Reassurance*, 831 F.2d 149 (7th Cir. 1987), and *Fla. Dep't. of Ins. v. World Re, Inc.*, 615 So. 2d 267 (Fla. Dist. Ct. App. 1993). However, *Washburn* and *World Re* both employed this fact-specific approach. In *Washburn*, the court held that a claim for conspiracy to defraud did not involve interpretation of the agreement and therefore did not need to go to arbitration. *Washburn,* 831 F.2d at 150. In *World Re,* the court held that a provision to arbitrate "irreconcilable difference of opinion" that "arise as to the interpretation of this certificate" was too narrow to include a fraudulent inducement claim. *World Re,* 615 So. 2d. at 268, 270.

agreement, "regardless of the legal labels ascribed to the claims." *Zimmerman*, 783 F. Supp. at 869.  This approach prevents parties from avoiding arbitration based on the way they frame their claims.  *Id.* at 871 (citing *In re Oil Spill by Amoco Cadiz Off Coast of France Mar. 16, 1978*, 659 F.2d 789, 794 (7th Cir. 1981)).

Even when applying this fact-specific approach, the strong presumption to arbitrate often guides the courts to find in favor or arbitration.  For instance, the Fifth Circuit ordered an economic duress claim to arbitration when it found that questions of interpretation or performance of the contract were central to the claim, and the claim arose out of a dispute regarding the original contract.  *Mar-Len of La., Inc. v. Parsons-Gilbane,* 773 F.2d 633, 636 (5th Cir. 1985).  The Seventh Circuit sent a fraudulent inducement claim to arbitration when it concluded that the claim involved questions of interpretation and performance.  *Schact v. Beacon Ins. Co.,* 742 F.2d 386, 391 (7th Cir. 1984).  Other courts have similarly interpreted fraudulent inducement claims to fall under more narrowly written arbitration provisions.  *RCM Techs., Inc. v. Brignik Tech., Inc.,* 137 F. Supp. 2d 550, 553 (D.N.J. 2001) (finding fraudulent inducement claims would require interpretation of the parties' agreement where the arbitration provision included any dispute that "arises as to the interpretation of this agreement.").  *Gen. Motors Overseas Dist. Corp. v. Kuwait Maritime Corp.*, No. 84-cv-5346, 1986 WL 12715, at *2 (S.D.N.Y. Nov. 3, 1986) (finding fraudulent inducement claim arises out of performance of the contract, when arbitration is required for disputes "arising out of the performance of this agreement."); *Hanna Furniture Co. v. Workbench, Inc.*, 561 F. Supp. 1243, 1245 (W.D. Pa. 1983) (finding that fraud in the inducement claim arises out of the contract between the parties,

and hence are "complaints, disputes or grievances involving interpretation of any of the provisions of this Agreement" as defined in the arbitration clause).

There are a few cases where courts have found narrow arbitration provisions to exclude claims of fraud.  In *Zimmerman,* the court held that the agreement related only peripherally to the outcome of the fraudulent misrepresentation claims because the claims did not involve rights under the agreement or analysis of the defendant's intent and conduct.  *Mut. Ben. Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 873 (D.N.J. 1992).  In two cases with very narrow provisions limiting arbitration to disputes arising out of specific transactions or documents, courts also found that fraudulent inducement claims were not covered by the arbitration clause.  *Baker v. Paine, Weber*, *Jackson & Curtis Inc., et. al.,* 637 F. Supp. 419 (D.N.J. 1986); *Carro v. Rivera v. Parade of Toys, Inc.*, 950 F. Supp. 449 (D.P.R. 1996).

Even if Renfrew's narrower interpretation of the arbitration provision were unequivocally correct, the fraudulent inducement claim would still fall under the narrower provision.  The factual allegations concern the representations that UNI/CARE's employee John Gohman made to Renfrew to convince it to buy UNI/CARE's software.  These include promises that the software would meet Renfrew's needs, integrate into Renfrew's existing system, and that Renfrew would receive the necessary training to use the software.  Many of these elements were incorporated into the language of the contract itself.  *See* Exhibit E, "Acceptance Criteria" at Compl. Ex. A 32-33.  The criteria include the ability to document referrals and patient information, monitor activities, produce management reports and process bills.  *Id*.  The criteria also include providing training for the new system.  *Id.* at 33.  Because Renfrew's cause of action overlaps with UNI/CARE's failure to perform according to the Acceptance Criteria of the

contract, relying on the fact specific analysis, the fraudulent inducement claim involves "a dispute regarding either party's performance under the terms of this Agreement," and therefore falls under the narrower reading of the arbitration provision.

As stated above, any doubts concerning the scope of arbitration are to be resolved in favor of arbitration. *Moses H. Cone,* 460 U.S. at 24-25. The arbitration provision here can be read either broadly or narrowly, requiring resolution in favor of arbitration. Even if I entertained Renfrew's narrower reading of the provision, the claim would still fall under the scope of the provision, requiring resolution in favor of arbitration.

## IV.    CONCLUSION

For the reasons stated above, UNI/CARE's motion to compel arbitration is granted and the complaint is dismissed.

_____/s/ Anita B. Brody_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to: